**UNITED STATES**

v.

**Allen L. DOOLEY, Personnelman Second Class (E–5), U.S. Navy.**

**NMCCA 200401792.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Decided 23 March 2005.

Capt Richard Viczorek, USMC, Appellate Defense Counsel.

Maj Kevin C. Harris, USMC, Appellate Government Counsel.

Before DORMAN, Chief Judge, HEALEY, and HARRIS, Appellate Military Judges.

DORMAN, Chief Judge:

This is a timely appeal brought by the Government under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862. The Government is appealing a 16 December 2004 ruling by the military judge granting the appellee's motion to dismiss based upon a violation of RULE FOR COURTS-MARTIAL 707(b)(3)(D), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.). In that ruling the military judge dismissed the Charge and its two Specifications with prejudice, thus terminating the Government's case against the appellee.

In its appeal the Government frames the issues as follows:

I. WHETHER THE MILITARY JUDGE ERRED BY FINDING THAT THE RULE FOR COURTS–MARTIAL 707 SPEEDY TRIAL COMPUTATION DID NOT BEGIN WHEN THE CONVENING AUTHORITY RECEIVED THE RECORD OF TRIAL AND THE OPINION AUTHORIZING A REHEARING BUT INSTEAD BEGAN WHEN THE RECORD OF TRIAL AND OPINION AUTHORIZING A REHEARING WAS RECEIVED IN THE MAILROOM OF NAVAL AIR FORCE, U.S. ATLANTIC FLEET, NORFOLK, VIRGINIA.

II. WHETHER THE MILITARY JUDGE, IN FINDING AN R.C.M. 707 VIOLATION, ERRED BY DISMISSING THE CHARGE AND SPECIFICATIONS WITH PREJUDICE.

We have thoroughly reviewed the entire record of trial and the outstanding briefs submitted by the Government and the appellee. Following that review, we answer the first question in the negative and the second in the affirmative.

### Facts

The appellee was tried by general court-martial in 1998. Contrary to his pleas, he was convicted of the receipt and possession of child pornography in violation of Article 134, UCMJ, and 18 U.S.C. § 2252A. On 8

December 1998 he was sentenced to confinement for 7 months, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged. The Court of Appeals for the Armed Forces (CAAF) set aside the appellee's conviction on 29 June 2004, based upon its decision in *United States v. O'Connor*, 58 M.J. 450 (C.A.A.F.2003). In accordance with CAAF's decision, the Judge Advocate General of the Navy returned the case to the CA, authorizing the CA to decide whether to retry the appellee. The CA decided to retry the appellee at a special court-martial for receipt and possession of child pornography. At the first session of the appellee's court-martial on 10 December 2004, the appellee moved to dismiss the Charge and Specifications for a violation of R.C.M. 707. Following an evidentiary hearing held on that date, the military judge made the following findings of fact:

A certified mail package, identified from [Appellate Exhibits VIII and X as the Record of Trial] and the order of the Court of Appeals from [sic] the Armed Forces, was received at the headquarters of Commander, Naval Air Force, U.S. Atlantic Fleet (COMNAVAIRLANT) on Tuesday, 13 July 2004. Because the package was sent by certified mail, it did not go into the mail room, operated by the Assistant Chief of Staff for Personnel and Administration (N1), but instead went into the "subregistry." According to LT Biles's testimony, this "subregistry" received its mail from the N1 office for further action (for example, distribution of the mail and annotation of the hand receipts). The log book entry, Appellate Exhibit VIII, was recognized by LT Biles as having been generated by the subregistry office. LT Biles received the record of trial some time in the morning of Monday, 19 July, and immediately began working on it. He drafted advice on the disposition of the case which was then submitted to the Force Judge Advocate. That advice led to the transmittal of the record to the Trial Service Office East ("TSO") for prosecutorial review the next day. Appellate Exhibit VII shows that the TSO completed its review and returned the

record on 23 August 2004. Court records disclose, and the Government acknowledged at oral argument and in its brief, that the Government's docketing request, dated 9 November (314), requested an arraignment of 15 November (320), some 139 days after the decision and 125 after the record was received at COMNAVAIRLANT. Petty Officer Dooley was arraigned on 10 December, the date agreed to by Defense Counsel in the docketing request.

Appellate Exhibit XVI at 1–2. The military judge then makes clear in the "Discussion" section of his Order that the convening authority received the opinion and court decision on 13 July 2004. *Id.* at 2.

## Discussion

Article 62, UCMJ, allows the Government, under specified conditions, to appeal "[a]n order or ruling of the military judge which terminates the proceedings with respect to a charge or specification." Art. 62(a)(1)(A), UCMJ. The standard of review in such cases is abuse of discretion. *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F.2004); *see also United States v. Hatfield*, 43 M.J. 662, 664 (N.M.Ct.Crim.App.1995), *rev'd on other grounds*, 44 M.J. 22 (C.A.A.F.1996); *United States v. Rivers*, 49 M.J. 434, 437 (C.A.A.F. 1998); *United States v. Houser*, 36 M.J. 392, 397 (C.M.A.1993). Furthermore, "[u]nder Article 62, UCMJ, our review is generally limited to matters of law. With respect to factual matters, we must defer to the findings of the trial judge if those findings are 'fairly supported by the record'. ..." *Hatfield*, 43 M.J. at 664 (quoting *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1985))(internal citations omitted). In that the Government is appealing the decision of the military judge in this case, the Government carries the burden to persuade us that the military judge's findings of fact are clearly erroneous, or that the military judge abused his discretion. *Houser*, 36 M.J. at 397; *Hatfield*, 43 M.J. at 664. In applying the abuse of discretion standard of review, we are not free to substitute our judgment for that of the military judge. *Burris*, 21 M.J. at 144.

## A. Findings of Fact

█ Applying the above standards to the appellee's record of trial, we conclude that the military judge's findings of fact are clearly supported by that record. We fully understand the issue raised by the Government concerning when the speedy trial clock for R.C.M. 707(b)(3)(D) purposes should have started. However, the military judge has made a factual determination that it started on 13 July 2004, when the package containing the appellee's original record and the opinion authorizing a rehearing arrived in an office under the control of the CA. Because that finding is fairly supported by the record, Article 62(b), UCMJ, restrains our ability to modify that finding. Accordingly, we adopt it as our own. Thus, since more than 120 days passed between the date the CA received the record of trial and the date the Government was prepared to arraign the appellee, the military judge did not err in dismissing the Charge and its two Specifications.

## B. Dismissal with Prejudice

In his Order dismissing the Charge and Specifications with prejudice, the military judge provides an explanation for his decision. His explanation properly focuses upon the factors outlined in R.C.M. 707(d), which addresses the remedy for failure to afford an accused the right to a speedy trial under R.C.M. 707. The Rule provides, in part:

> The charges must be dismissed with prejudice where the accused has been deprived of his or her constitutional right to a speedy trial. In determining whether to dismiss charges with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case that lead to dismissal; the impact of a reprosecution on the administration of justice; and any prejudice to the accused resulting from the denial of a speedy trial.

R.C.M. 707(d). In that regard, the military judge's Order contains the following analysis.

*Seriousness of the offense:* The court agrees with the Government's argument that [it] is the offense, and not the potential punishment, that should be considered. The allegations against PH2 Dooley are serious, both in terms of the punishment that they could have carried but for Article 63, UCMJ, 10 U.S.C. § 863, and for the societal norms that they implicate.

*Factors leading to dismissal:* While the Government's efforts to review the case are praiseworthy, and the efforts to minimize the impact on the accused are to be applauded, still it seems that inordinate delay occurred at several points in the process. The case law is now well[-]settled, and judging by Appellate Exhibit XV this was a relatively small record of trial (under 150 pages), yet the "courtesy screening" took over a month. An additional 2 months elapsed pending the referral decision; granted, some of that time was necessary to locate the evidence and to evaluate it, but the Government has not made a convincing case that all of that time was necessary. Further, once the case was delivered to the Trial Service Office for prosecution on 29 October, it took the Government nearly 2 weeks to route a docketing request. Even scheduling the hearing on the speedy trial motion revealed some lack of urgency on the part of the Government, as Trial Counsel stood on the local rule's 5–day period to respond to motions and asked for further delays to complete a pretrial investigation in an unrelated case. The court recognizes that the Defense had by that point requested a continuance, but the Government should still have been prepared to go at an earlier date.

*Effect of retrial on the administration of justice:* If trial is allowed to proceed, then Rule 707 will have lost its plain meaning. The rule does not say "legal advisor to the responsible convening authority," it says "responsible convening authority." A command without a staff judge advocate attached would be able to drag out proceedings *ad infinitum,* waiting on the desired legal advice. Commands with labyrinthine routing systems would be given a pass from the requirements of the rule. The court does not fear that commanders will bypass necessary staff advice in order to

comply with the rule; rather, the court believes that commanders will impose reasonable, attainable milestones for action in a given case.

*Prejudice to the accused:* Petty Officer Dooley is suffering prejudice daily. It is true that he is earning pay and allowances established by law (or at least will be when the administrative problems with his reactivation are sorted out). The court acknowledges the substantial effort put forth to minimize the impact on PH2 Dooley, but he is in fact being subjected to punishment in the Transient Personnel Unit without due process. He is a photographer's mate who is not permitted to work in his rating. He is a second class petty officer who is not supervising troops. *See generally United States v. Cruz*, 25 M.J. 326, 330 (C.M.A.1987). This observation is not meant as a criticism on the administration of the TPU, but rather is meant to highlight that this highly unusual case brings with it highly unusual prejudice.

Appellate Exhibit XVI at 3–4. We fully concur with the military judge that the appellee's crimes are serious. We, however, find fault with his analysis of the remaining three factors.

■ With respect to the factors leading to the dismissal, the military judge seemingly imposes a higher standard upon the Government under R.C.M. 707 than is imposed under Article 10, UCMJ, 10 U.S.C. § 810. He concludes that the Government should have been prepared for trial on an earlier date. Under Article 10, UCMJ, dismissal does not result unless it can be shown that the Government did not proceed with reasonable diligence. *United States v. Kossman*, 38 M.J. 258, 262 (C.M.A.1993). In determining whether the Government proceeded with reasonable diligence, "[b]rief periods of inactivity in an otherwise active prosecution are not unreasonable or oppressive." *Id.* (quoting *United States v. Tibbs*, 35 C.M.R. 322, 325, 1965 WL 4672 (C.M.A.1965)). In upholding a decision of a military judge denying a motion to dismiss with prejudice under R.C.M. 707, our superior court noted that there was no evidence of " 'intentional dilatory conduct' on the part of the Government." *United States*

*v. Edmond*, 41 M.J. 419, 422 (C.A.A.F 1995). Nor is there in the case before us. Additionally, the military judge suggests that this case of "under 150 pages" should not have taken so long to review. Due to the fact that our superior court reversed this case pursuant to its decision in *O'Connor*, however, the Government was obligated to locate the evidence and evaluate it to determine whether the images the appellee had received and possessed were images of actual children. *See O'Connor*, 58 M.J. at 453.

■ With respect to the effect of a retrial on the administration of justice, we do not concur that "Rule 707 will have lost its plain meaning" should the appellee's trial proceed. Appellate Exhibit XVI at 4. Indeed, that could be said in every case where there had been a violation of R.C.M. 707, yet the rule itself allows for dismissal without prejudice. R.C.M. 707(d). Here the military judge's analysis seems wide of the mark, as he focuses solely on the question of when a responsible CA receives the record and the opinion authorizing a rehearing. That simply addresses the question of when the speedy trial clock began to tick in this case, and not the impact on the administration of justice. Furthermore, the military judge's comment about commands dragging out the proceedings *"ad infinitum"* is not relevant to the facts of *this* case. Missing from the military judge's analysis is any consideration of the fact that this case was returned because the Supreme Court struck down a portion of the statute the appellee had been convicted of violating. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). We find that the effect of a retrial is relatively neutral in this case. Due to the limited holding in *Free Speech Coalition*, the Government is allowed an opportunity to retry the appellee, and the appellee is accorded all his legal rights.

Concerning prejudice to the appellee, we disagree with the assessment by the military judge. First, while he cites *Cruz* in support of his decision, *Cruz* is a case in which the appellant had been subjected to illegal pretrial punishment. There is no suggestion in this record of trial that the appellee has been subjected to pretrial punishment, and the

military judge did not make such a finding. Second, we also concur with the argument made by the Government counsel at trial that any prejudice the appellee has been subjected to is incidental to his being activated to stand trial and not a result of any delay on the part of the Government. Also missing from the military judge's analysis is consideration of the fact that although it took the Government 125 days to be prepared to arraign the appellee from the date the responsible CA received the record, the appellee was not even on active duty for 100 of those days. He was recalled to active duty on 22 October 2004 and the Government sought to arraign him on 15 November 2004—25 days later.

Additionally, we note one other factor that could have been considered and apparently was not. R.C.M. 707(c)(1), Discussion, addresses excludable periods of time from the R.C.M. 707 120–day calculation. One reason listed is "time to process a member of the reserve component to active duty for disciplinary action...." The present situation is analogous. We note the language of our superior court in another Government appeal involving R.C.M. 707. "[H]ad the Government sought a contemporaneous ruling on the accused's unauthorized absence, this issue ... could have been avoided altogether." *United States v. Dies*, 45 M.J. 376, 378 (C.A.A.F.1996). Similarly, in this case the CA could have exercised his discretion and excluded a portion of the period of time during which the appellee was still in an inactive duty status, avoiding this entire R.C.M. 707 issue.

For the above reasons we conclude that this case is not a close call. We hold that the military judge clearly abused his discretion when he dismissed the Charge and Specifications against the appellee, with prejudice.

### Decision

The Government appeal concerning whether the military judge erred when he determined that the speedy trial clock began to run on 13 July 2004 is denied. The military judge properly dismissed the Charge and its two Specifications. The Government's appeal concerning whether the military judge abused his discretion when he dismissed the Charge and Specifications with prejudice is granted. Consistent with this decision the Government may re-prefer the dismissed Charge and its Specifications, and an appropriate CA may, within his discretion, refer that sworn Charge and its Specifications to trial by court-martial.

Judge HARRIS and Judge HEALEY concur.