IN THE CASE OF

UNITED STATES, Appellee

v.

Allen L. DOOLEY, Photographer's Mate Second Class
U.S. Navy, Appellant

No. 05-6002

Crim. App. No. 200401792

United States Court of Appeals for the Armed Forces

Argued May 17, 2005

Decided August 3, 2005

GIERKE, C.J., delivered the opinion of the Court, in which
CRAWFORD, EFFRON, BAKER, and ERDMANN, JJ., joined.

Counsel

For Appellant:  Captain Richard A. Viczorek, USMC (argued).

For Appellant:  Major Kevin C. Harris, USMC (argued); Commander
Charles N. Purnell II, JAGC, USN (on brief).


Military Judge:  Lewis T. Booker Jr.



**This opinion is subject to revision before final publication.**

Chief Judge GIERKE delivered the opinion of the Court.

The military judge dismissed Appellant's case with prejudice based on a violation of Rule for Courts-Martial (R.C.M.) 707, the right to a speedy trial. The United States Navy-Marine Corps Court of Criminal Appeals (CCA) agreed that a violation of R.C.M. 707 had occurred but disagreed with the military judge's decision to dismiss with prejudice and reversed his decision.[1] This case illustrates the difficulty an intermediate appellate court faces when balancing the deference due a military judge under the abuse of discretion standard with the potential drastic remedy of dismissal with prejudice. We granted review to determine if the lower court erred in reversing the military judge's decision.[2]

We hold that the military judge did not abuse his discretion in dismissing Appellant's case with prejudice. We therefore reverse the opinion of the Navy-Marine Corps Court of Criminal Appeals and reinstate the decision of the military judge to dismiss with prejudice.

---

[1] See United States v. Dooley, No. NMCCA 200401792, 2005 CCA LEXIS 90, 2005 WL 1389137 (N-M. Ct. Crim. App. Mar. 23, 2005).
[2] More specifically, we granted review of the following issue:
> Whether the Navy-Marine Corps Court of Criminal Appeals erred by applying the wrong standard of review when it reversed the military judge's decision to dismiss the charge and specification with prejudice?

United States v. Dooley, 61 M.J. __, No. 05-6002, 2005 CAAF LEXIS 458 (C.A.A.F. May 5, 2005).

PROCEDURAL BACKGROUND

In 1998, Appellant was tried and convicted of the receipt and possession of child pornography in violation of Article 134(3), Uniform Code of Military Justice (UCMJ).[3] Appellant served seven months of confinement. This Court set aside his conviction on June 29, 2004,[4] based on our decision in United States v. O'Connor.[5] The Judge Advocate General of the Navy then returned the case to the convening authority, who decided to retry Appellant for the receipt and possession of child pornography. At the first session of the special court-martial on December 10, 2004, the military judge found a violation of Appellant's right to a speedy trial. The military judge performed an analysis of the factors listed in R.C.M. 707[6] and dismissed the case with prejudice. The Government filed an appeal under Article 62, UCMJ,[7] and the Navy-Marine Corps Court of Criminal Appeals subsequently reversed the military judge's

---

[3] 10 U.S.C. § 934 (2000). Appellant was convicted of violating 18 U.S.C. § 2252A, incorporated under Article 134, UCMJ.
[4] United States v. Dooley, 60 M.J. 130 (C.A.A.F. 2004).
[5] 58 M.J. 450, 453 (C.A.A.F. 2003).
[6] R.C.M. 707 states that, "[i]n determining whether to dismiss charges with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case that lead to dismissal; the impact of a reprosecution on the administration of justice; and any prejudice to the accused resulting from the denial of a speedy trial." R.C.M. 707(d).
[7] 10 U.S.C. § 862 (2000).

ruling, determining that he abused his discretion in dismissing the case with prejudice.[8]

I. <u>The military judge's decision to dismiss with prejudice</u>[9]

The military judge first concluded that the Government had violated R.C.M. 707 because Appellant was arraigned more than 120 days after the convening authority received the record. The military judge found that the record of trial, along with this Court's opinion, was received at the headquarters of the Commander, Naval Air Force, U.S. Atlantic Fleet (COMNAVAIRLANT) on July 13, 2004. The Government's docketing request, placed on the docket on November 9, 2004, did not request arraignment until November 15. The military judge thus determined that the docketing request was filed 139 days after the decision and 125 days after the record was received at COMNAVAIRLANT, and that accordingly the case must be dismissed.

The military judge then considered the four factors listed under R.C.M. 707 to determine whether the dismissal should be with prejudice. First, the military judge considered the seriousness of the offense. He stated that the "allegations against [Appellant] are serious, both in terms of the punishment

---

[8] <u>Dooley</u>, 2005 CCA LEXIS 90, 2005 WL 1389137.
[9] We note that the military judge's order was originally missing page four when it was filed with the Navy-Marine Corps CCA as Appellate Exhibit XVI. On January 26, 2005, appellate government counsel filed a Motion to Attach with the CCA correcting the error.

4

that they could have carried but for Article 63, UCMJ, . . . ,
and for the societal norms that they implicate."

Considering the factors that led to dismissal, the military
judge acknowledged that the Government's efforts to review the
case were "praiseworthy," and that the "efforts to minimize the
impact on the accused are to be applauded."  But he found that
"inordinate delay occurred at several points in the process."
More specifically, the military judge found that the "courtesy
screening"[10] of the "relatively small record of trial (under 150
pages)" took over a month.  Then, two more months elapsed
"pending the referral decision; granted, some of that time was
necessary to locate the evidence and to evaluate it, but the
Government has not made a convincing case that all of that time
was necessary."  Furthermore, it took nearly two weeks for the
Government to route a docketing request.  The military judge
also found that "[e]ven scheduling the hearing on the speedy
trial motion revealed some lack of urgency on the part of the
Government . . . ."  Finally, he recognized that "the Defense

---

[10] Although the military judge does not define the time period
which he labeled as the "courtesy screening," it appears that
the military judge was most likely referring to the period
between July 20 and August 23.  Based on the testimony of
Lieutenant Biles, who was working in the COMNAVAIRLANT Staff
Judge Advocate Office at the time, this time elapsed while the
Trial Service Office was reviewing Appellant's case and
determining whether to recommend reprosecuting Appellant.  About
two more months then elapsed between August 23 and October 22,
when Appellant was recalled to be reprosecuted.

had by that point requested a continuance, but the Government should still have been prepared to go at an earlier date."

The third R.C.M. 707 factor is the effect of a retrial on the administration of justice. The military judge asserted that R.C.M. 707 would lose its plain meaning if a trial is allowed to proceed in this case. Interpreting the rule, he focused on the accountability of the convening authority over his subordinate servicemembers. The military judge rejected the Government's implicit attempt to insulate the convening authority from the delay caused by subordinates. He noted that the rule refers to a "responsible convening authority," rather than a "legal advisor to the responsible convening authority." If a convening authority was not held accountable for time awaiting legal advice, the military judge reasoned, "[a] command without a staff judge advocate attached would be able to drag out proceedings ad infinitum, waiting on the desired legal advice. Commands with labyrinthe routing systems would be given a pass from the requirements of the rule." The military judge concluded by stating that he does "not fear that commanders will bypass necessary staff advice in order to comply with the rule; rather, the court believes that commanders will impose reasonable, attainable milestones for action in a given case."

Finally, the military judge considered "any prejudice resulting [to Appellant] from [the] denial of a speedy trial."[11] He found that Appellant is "suffering prejudice daily." Recognizing that Appellant is earning pay and allowances established by law and that the Government put forth "substantial effort" to minimize the impact on Appellant, the military judge found that "he is in fact being subjected to punishment in the Transient Personnel Unit without due process. He is a photographer's mate who is not permitted to work in his rating. He is a second class petty officer who is not supervising troops."

II.  The Navy-Marine Corps Court of Criminal Appeals' review of the military judge's decision

The CCA adopted the military judge's finding that more than 120 days passed between the date the convening authority received the record of trial and the date the Government was prepared to arraign Appellant.[12]  Thus, it agreed that there was a violation of R.C.M. 707.[13]  But the lower court concluded that the military judge abused his discretion in dismissing with prejudice.[14]

---

[11] See R.C.M. 707(d).
[12] See Dooley, 2005 CCA LEXIS 90, at *5-*7, 2005 WL 1389137, at *2.
[13] Id.
[14] 2005 CCA LEXIS 90, at *10-*16, 2005 WL 1389137, at *4-*5.

Regarding the first factor under R.C.M. 707, the CCA "fully concur[red]" with the military judge's finding that Appellant's crimes were serious.[15] However, the court disagreed with the military judge's analysis of the other three factors. Regarding the first factor -- the facts and circumstances that led to the delay -- the CCA determined that the military judge erred by imposing a higher standard on the Government under R.C.M. 707 than is imposed under Article 10, UCMJ.[16] Under Article 10, it must be shown that the Government did not proceed with "reasonable diligence"[17] or that it acted with "intentional dilatory conduct."[18] The CCA found no evidence of either in this case.[19] Furthermore, "brief periods of inactivity in an otherwise active prosecution are not unreasonable or oppressive."[20] Concluding its discussion of the first factor, the CCA disagreed with the military judge that "this case of 'under 150 pages' should not have taken so long to review." The CCA stated that, because the case was reversed based on this Court's decision in O'Connor, "the Government was obligated to locate the evidence and evaluate it to determine whether the

---

[15] 2005 CCA LEXIS 90, at *10, 2005 WL 1389137, at *4.
[16] 2005 CCA LEXIS 90, at *11-*12, 2005 WL 1389137, at *4.
[17] United States v. Kossman, 38 M.J. 258, 262 (C.M.A. 1993).
[18] United States v. Edmond, 41 M.J. 419, 422 (C.A.A.F. 1995).
[19] Dooley, 2005 CCA LEXIS 90, at *11, 2005 WL 1389137, at *4.
[20] Id. (quoting United States v. Tibbs, 15 C.M.A. 350, 353, 35 C.M.R. 322, 325 (1965)).

images [Appellant] had received and possessed were images of actual children."[21]

Discussing the effect of a retrial on the administration of justice, the CCA asserted that the military judge's analysis "seems wide of the mark," because "he focuses solely on the question of when a responsible CA receives the record and the opinion authorizing a rehearing. That simply addresses the question of when the speedy trial clock began to tick in this case, and not the impact on the administration of justice."[22] The lower court noted that missing from the military judge's analysis is any consideration of the fact that this case was returned because the Supreme Court, in Ashcroft v. Free Speech Coalition,[23] struck down a portion of the statute Appellant was convicted of violating.[24] The CCA then determined that the effect of a retrial is "relatively neutral . . . . Due to the limited holding in Free Speech Coalition, the Government is allowed an opportunity to retry [Appellant] and [Appellant] would be accorded all his legal rights."[25]

Moreover, the lower court disagreed with the military judge's assessment of prejudice against Appellant.[26] The CCA agreed with the Government that any prejudice experienced by

---

[21] 2005 CCA LEXIS 90, at *12, 2005 WL 1389137, at *4.
[22] Id.
[23] 535 U.S. 234 (2002).
[24] 2005 CCA LEXIS 90, at *12-*13, 2005 WL 1389137, at *4.
[25] 2005 CCA LEXIS 90, at *13, 2005 WL 1389137, at *4.
[26] 2005 CCA LEXIS 90, at *13-*14, 2005 WL 1389137, at *5.

Appellant "is incidental to his being activated to stand trial and not a result of any delay on the part of the Government."[27] The lower court noted that "also missing from the military judge's analysis is consideration of the fact that" Appellant was not on active duty for 100 of the 125 days it took the Government to be prepared to arraign Appellant from the date the "responsible CA received the record."[28] Rather, Appellant was recalled to active duty on October 22, 2004, and the Government sought to arraign him on November 15, twenty-five days later.[29]

Finally, the CCA noted that the military judge did not consider the Discussion to R.C.M. 707(c)(1), which provides that the excludable periods of time from the 120-day calculation include the "time to process a member of the reserve component to active duty for disciplinary action."[30] The CCA finds the situation in this case analogous to recalling a servicemember to active duty.[31] It asserted that, similar to the situation in United States v. Dies,[32] "the CA could have exercised his discretion and excluded a portion of the period of time during which [Appellant] was still in an inactive duty status, avoiding this entire R.C.M. 707 issue."[33]

---

[27] 2005 CCA LEXIS 90, at *13, 2005 WL 1389137, at *5.
[28] 2005 CCA LEXIS 90, at *13-*14, 2005 WL 1389137, at *5.
[29] 2005 CCA LEXIS 90, at *14, 2005 WL 1389137, at *5.
[30] Id. (citing R.C.M. 707(c)(1) discussion).
[31] Id.
[32] 45 M.J. 376, 378 (C.A.A.F. 1996).
[33] Dooley, 2005 CCA LEXIS 90, at *14, 2005 WL 1389137, at *5.

The CCA concluded that "this case is not a close call."[34] It held, therefore, "that the military judge clearly abused his discretion when he dismissed the Charge and Specifications . . . with prejudice."[35]

DISCUSSION

Under R.C.M. 707, the military judge is directed to apply certain factors in determining a remedy for a speedy trial violation, and then decide whether those factors lead to the conclusion that the case should be dismissed with or without prejudice.  Under an abuse of discretion standard, mere disagreement with the conclusion of the military judge who applied the R.C.M. 707 factors is not enough to overturn his judgment.  The standard requires that the military judge be clearly wrong in his determination of the facts or that his decision be influenced by an erroneous view of the law.[36]  We conclude that, in this case, the Navy-Marine Corps Court of Criminal Appeals erred in reversing the military judge's decision because it applied an improper standard of review.

---

[34] 2005 CCA LEXIS 90, at *15, 2005 WL 1389137, at *5.
[35] Id.
[36] See United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F. 1995).

I.  The standard of review

United States v. Gore[37] presented us with an issue similar to the one in this case.  In Gore, the military judge dismissed all charges with prejudice as a remedy for unlawful command influence and the Government appealed, pursuant to Article 62, UCMJ.[38]  Although the CCA agreed with the military judge that there was unlawful command influence, it determined that the military judge abused his discretion in dismissing the case with prejudice.[39]  We stated that, because neither the lower court nor the Government challenged the finding of unlawful command influence, the real issue was "whether the military judge erred in fashioning the remedy."[40]

Similarly, in this case, neither the Government nor the lower court disputes that a violation of R.C.M. 707 occurred. Rather, both maintain that the case should not have been dismissed with prejudice and that the Government should have the opportunity to retry Appellant.  The pertinent question for our review, therefore, is whether the military judge erred in his conclusion that an analysis of the factors listed in R.C.M. 707 supports dismissal of Appellant's case with prejudice.

---

[37] 60 M.J. 178 (C.A.A.F. 2004).
[38] Id. at 179.
[39] Id.
[40] Id. at 186-87.

12

In Gore, we explained the deference that must be accorded a military judge under the abuse of discretion standard.  We stated:

> An abuse of discretion means that when judicial action is taken in a discretionary manner, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors . . . . We will reverse for an abuse of discretion if the military judge's findings of fact are clearly erroneous or if his decision is influenced by an erroneous view of the law . . . . Further, the abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range.[41]

"[D]ismissal is a drastic remedy and courts must look to see whether alternative remedies are available."[42]  But dismissal is "appropriate when an accused would be prejudiced or no useful purpose would be served by continuing the proceedings."[43]  Deference to the military judge's decision is particularly prudent in those cases when a violation of R.C.M. 707(d) has occurred because, as the legislative history of the Speedy Trial Act[44] demonstrates, Congress clearly intended trial judges to

---

[41] Gore, 60 M.J. at 187 (internal quotations and citations omitted).

[42] Id. (citing United States v. Cooper, 35 M.J. 417, 422 (C.M.A. 1992)).

[43] Id. (citing United States v. Green, 4 M.J. 203, 204 (C.M.A. 1978)).

[44] R.C.M. 707(d) is based on the Speedy Trial Act of 1974, 18 U.S.C. § 3162 (2000).  See Manual for Courts-Martial, United States (2002 ed.) Analysis of Rules of Courts-Martial A21-42. Whether to require dismissal with prejudice in certain circumstances was the subject of substantial debate when Congress considered the Speedy Trial Act.  See United States v.

have "guided discretion" whether to dismiss with or without prejudice.[45]  Furthermore, "neither remedy was given priority."[46] Rather, a military judge's decision is guided by the factors articulated in R.C.M. 707 and can be reversed only for a clear abuse of discretion.  More specifically, the military judge's decision in this case should be affirmed unless his factual findings are clearly erroneous or his decision in applying the R.C.M. 707 factors was influenced by an incorrect view of the law.[47]

## II.  Application of the R.C.M. 707 factors

Under R.C.M. 707, the first factor that a military judge must consider in determining whether to dismiss with prejudice is the seriousness of the offense.  In this case, the military judge and the CCA agree that Appellant's crimes were serious.

---

Taylor, 487 U.S. 326, 334 (1988).  "[P]roponents of uniformly barring reprosecution argu[ed] that without such a remedy the Act would lack any real force, and opponents express[ed] fear that criminals would unjustly escape prosecution."  Id. (citing Anthony Partridge, Legislative History of Title I of the Speedy Trial Act of 1974 31–33 (1980)).  The compromise was that the decision whether to dismiss with prejudice would be left to the discretion of trial judges, guided by certain factors.  Id. at 335.

[45] Taylor, 487 U.S. at 335.

[46] Id.; see also Edmond, 41 M.J. at 421 (noting that "[n]either the dismissal with prejudice nor without prejudice has a priority").

[47] See Taylor, 487 U.S. at 337 ("Factual findings . . . are . . . entitled to substantial deference and will be reversed only for clear error . . . . [W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed.").

The finding that the receipt and possession of child pornography is a serious offense, in its impact on both victims and society, is not clearly erroneous.

In analyzing the facts and circumstances that led to his decision to dismiss with prejudice, the military judge weighed the efforts of the Government that he found "praiseworthy" and "to be applauded" against the factors that contributed to the delay. He clearly articulated the basis for his findings -- that, despite the good efforts by the Government, all the elapsed time was not "necessary" and it showed a "lack of urgency" on the part of the Government. We agree with the CCA that the military judge did not find "intentional dilatory conduct on the part of the Government" and that he did not explicitly state that the Government's attitude was "truly neglectful."[48] Whether the military judge used these exact phrases, however, is not the test under the abuse of discretion standard. Rather, the question is whether his findings of fact were "'clearly erroneous or if his decision is influenced by an erroneous view of the law.'"[49] The CCA did not find that the military judge's factual findings were clearly erroneous. Rather, it stated the military judge's findings were factually

---

[48] See Edmond, 41 M.J. at 421-22 (holding that the military judge did not abuse his discretion in dismissing charges without prejudice under R.C.M. 707 because there was no "intentional dilatory conduct" by the Government and there was little prejudice suffered by the appellee).
[49] Gore, 60 M.J. at 187 (citations omitted).

correct and "clearly supported by th[e] record."[50]  Because the

CCA was essentially asserting that it disagreed with the

military judge that the Government's actions did not constitute

"truly neglectful" conduct, we agree with Appellant that the CCA

was substituting its judgment for that of the military judge.

Therefore, the CCA erred by performing a de novo review of the

"facts and circumstances that le[d] to dismissal."[51]

   The third factor to consider under R.C.M. 707(d) is the

effect of the retrial on the administration of justice.[52]  We

believe the military judge was correct to note that the plain

meaning of R.C.M. 707 may be thwarted if trial is allowed to

proceed in this case.  The rule requires the military judge to

dismiss the case but, if the military judge dismisses without

prejudice and the Government decides to reprosecute the accused,

the remedy leads to further delay.

   We agree with the CCA's interpretation that the "effect of

a retrial is relatively neutral in this case."[53]  On the one

---

[50] _Dooley_, 2005 CCA LEXIS 90, at *6, 2005 WL 1389137, at *2.
[51] R.C.M. 707(d).
[52] _See generally_ _United States v. Scott_, 743 F. Supp. 400, 407–08 (D. Md. 1990).  The court determined there was a "rather even balance" between the arguments of the two parties regarding the administration of justice factor.  It weighed the defendant's argument –- that the justice system already has mechanisms to ensure that the defendant will be punished for his alleged misconduct –- against the Government's argument –- that a defendant will be able to avoid prosecution by entering plea negotiations and refusing Government offers until a speedy trial violation has occurred.
[53] _Dooley_, 2005 CCA LEXIS 90, at *13, 2005 WL 1389137, at *4.

hand, the Government's interest in reprosecuting Appellant is diminished because he served seven months of confinement in 1998. Thus, even if Appellant is reprosecuted and convicted, he cannot serve any more confinement. On the other hand, dismissing the case with prejudice means that Appellant will no longer be a "convicted" possessor of child pornography due to the 2004 decision to overturn his conviction. Additionally, as noted by the CCA, his conviction was overturned because of the Supreme Court's holding in Ashcroft v. Free Speech Coalition. If Appellant is retried, the Government would have the opportunity to retry him in light of the new legal precedent and Appellant would not be convicted based on an erroneously overbroad definition of child pornography.

Although the CCA properly interpreted the effect of retrial on the administration of justice, it did not clearly articulate an appropriate basis to overturn the military judge's decision.[54] Rather than determining that the military judge was clearly erroneous in any factual finding or that his decision was based on an incorrect view of the law, the CCA stated that it did not "concur" with the military judge's decision and that it found the effect of the retrial relatively neutral.[55] Thus the CCA failed to apply the correct legal standard in reversing the ruling of the military judge.

---

[54] 2005 CCA LEXIS 90, at *11-*15, 2005 WL 1389137, at *4-*5.
[55] 2005 CCA LEXIS 90, at *12-*13, 2005 WL 1389137, at *4.

The final factor that must be considered under R.C.M. 707(d) is prejudice to the accused. Prejudice may take many forms, thus "such determinations must be made on a case-by-case basis in the light of the facts."[56] Prejudice can include any detrimental effect on Appellant's trial preparation,[57] or any impact on the right to a fair trial.[58] It can also include any restrictions or burdens on his liberty,[59] such as disenrollment from school or the inability to work due to withdrawal of a security clearance.[60] Regarding prejudice to Appellant, the military judge clearly articulated that he found Appellant was "suffering prejudice daily." He found that Appellant was "in fact being subjected to punishment in the Transient Personnel Unit without due process," because he is a photographer's mate not allowed to work in his rating and a second class petty officer not permitted to supervise troops.

The CCA stated that it "disagree[ed] with the assessment by the military judge" and that it "concur[ed]" with the trial counsel's argument that any prejudice suffered by Appellant is

---

[56] Taylor, 487 U.S. at 341 n.13.
[57] Id. at 341.
[58] Edmond, 41 M.J. at 422; see also Gore, 60 M.J. at 187-88 (affirming the military judge's dismissal with prejudice where the military judge identified the extent and negative impact of the unlawful command influence on the appellant's right to a fair trial).
[59] Taylor, 487 U.S. at 341.
[60] Edmond, 41 M.J. at 422.

incidental to recall for trial.[61]  Whether the CCA disagrees with the military judge or concurs with the trial counsel is not the standard of review.  The military judge clearly articulated his reasoning for believing Appellant was being unfairly prejudiced. Therefore, the CCA could not reverse the military judge's prejudice finding absent a determination that it was clearly erroneous.

Furthermore, other evidence of prejudice was on the record and before the military judge.  Approximately sixteen pages of the record was devoted to exploring the prejudice Appellant was suffering because he was recalled to active duty after five years of appellate leave.[62]  We note these other forms of prejudice solely to emphasize that the military judge was in the best position to assess the prejudice Appellant was suffering because he questioned Appellant extensively about his life since being recalled.  We need not, however, consider these factors in concluding that the factual findings of the military judge were neither clearly erroneous nor based on an incorrect view of the law.  Therefore, the military judge did not abuse his discretion

---

[61] Dooley, 2005 CCA LEXIS 90, at *13, 2005 WL 1389137, at *5.
[62] According to Appellant's testimony, not only did he lose his job, but because he was informed on October 14 that he would be recalled on October 18, he also lost his seniority status and any chance of returning to that job.  Because he did not give the required two weeks notice before quitting, his boss was "shocked and amazed" at Appellant being recalled and has failed to contact him since.  Additionally, Appellant's fiancée, a homemaker, lost the benefits she was entitled to under Appellant's former employment and began receiving welfare.

and the CCA erred in reversing his decision to dismiss with prejudice.

## DECISION

The decision of the Navy-Marine Corps Court of Criminal Appeals is reversed.  The decision of the military judge is reinstated.