**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

---

**UNITED STATES**

**v.**

**Airman First Class JONATHAN J. ARMA**
**United States Air Force**

**Misc. Dkt. No. 2014-09**

**22 October 2014**

GCM convened at Maxwell Air Force Base, Alabama. Military Judge: Ronald A. Gregory, Joshua E. Kastenberg, and Lynn Watkins

Appellate Counsel for the Appellee: Major Nicholas D. Carter (argued) and Lieutenant Colonel Joy L. Primoli.

Appellate Counsel for the United States: Captain Richard J. Schrider (argued); Lieutenant Colonel Katherine E. Oler; and Gerald R. Bruce, Esquire.

Before

HECKER, WEBER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

TELLER, Judge:

The Government filed an interlocutory appeal under Article 62, UCMJ, 10 U.S.C. § 862, in this matter. The Government challenges the military judge's ruling to dismiss all charges and specifications with prejudice. The military judge's ruling was in response to a defense motion to dismiss based on late production of evidence and alleged witness tampering. In addition to those matters, the military judge also addressed what she perceived as a defective preferral of charges and a violation of the accused's Sixth Amendment[1] right to a speedy trial.

---

[1] U.S. CONST. amend. VI.

*Background*

On 26 September 2013, the appellee was charged with two specifications of sexual assault, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The convening authority referred the charges to a general court-martial on 11 November 2013. The specifications both concern the appellee's alleged conduct toward a fellow Airman with whom he had had a brief dating relationship. One charged assault allegedly took place in May 2013, after the end of that relationship. The other alleged assault, which came to light during the investigation of the May incident, took place during the relationship in February 2013.

On 21 November 2013, the first military judge was assigned to the case, and the court-martial was docketed for 11 February 2014. After the appellee's release of his initial trial defense counsel shortly before trial and Government delays in producing polygraph evidence (discussed in detail below), the military judge arraigned the appellee on 7 February 2014 and delayed the beginning of the trial on the merits. After arraignment, the military judge ordered the production of records related to the polygraph. A second military judge was detailed to the case on 25 February 2014, and a new trial date was set for 29 April 2014.

During the ensuing months, the military judge addressed additional discovery issues. Following an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session on 25 April 2014, the military judge issued a second, more expansive order compelling the production of the complete record of the polygraph examination. The failure to produce these documents and the late production of potentially exculpatory Facebook messages resulted in a second delay.

A third military judge was detailed to the case on 30 April 2014 and a new trial date of 9 June 2014 was established. Motion practice began as scheduled on 9 June 2014, including consideration of the defense motion to dismiss for failure to disclose and produce evidence, and witness tampering. The military judge granted the motion to dismiss on 12 June 2014.

The Government timely appealed the military judge's ruling to dismiss the charges and specifications with prejudice.

*Jurisdiction*

Military appellate courts are courts of limited jurisdiction; prosecution appeals are not favored and are available only upon specific statutory authorization. *United States v. Wuterich*, 67 M.J. 63, 70 (C.A.A.F. 2008). This court has jurisdiction to hear this appeal under Article 62(a)(1)(A), UCMJ, which authorizes the Government to

appeal "[a]n order or ruling . . . which terminates the proceedings with respect to a charge or specification" in a court-martial where a punitive discharge may be adjudged.

*Standard of Review*

We review a military judge's ruling to dismiss charges and specifications for an abuse of discretion. *United States v. Douglas*, 68 M.J. 349, 354 (C.A.A.F. 2010); *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004). "'Abuse of discretion' is a term of art applied to appellate review of the discretionary judgments of a trial court. An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citing *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007)).

A military judge enjoys "broad discretion" under the abuse of discretion standard in selecting an appropriate remedy to correct a wrong. *Douglas*, 68 M.J. at 354. In this situation, where the military judge has several possible remedies from which to choose, the abuse of discretion standard of review "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *Gore*, 60 M.J. at 187 (citing *United Sates v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)). The abuse of discretion standard recognizes that "'when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993) (quoting Magruder, J., *The New York Law Journal* at 4, col. 2 (March 1, 1962)). Therefore, even though dismissing charges with prejudice is a "drastic remedy" requiring military judges to "look to see whether alternative remedies are available," the military judge's decision will be upheld so long as it was "within the range of remedies available and not otherwise a clear error of judgment." *Gore*, 60 M.J. at 187, 189.

In contrast to our powers of review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), this court "may act only with respect to matters of law" in an Article 62, UCMJ, appeal. Article 62(b), UCMJ; Rule for Courts-Martial (R.C.M.) 908(c)(2). We are bound by the military judge's findings of fact unless they are clearly erroneous, and we cannot find our own facts in addition to or contrary to the facts found by the military judge, nor can we substitute our interpretation of her facts. *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007). "When a court is limited to reviewing matters of law, the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are fairly supported by the record." *Gore*, 60 M.J. at 185 (quoting *United States v. Burris*, 21 M.J. 140, 144 (C.M.A. 1985)) (internal quotation marks omitted). In an Article 62, UCMJ, petition, we

review the military judge's decision and the evidence in the light most favorable to the prevailing party at trial. *United States v. Wicks*, 73 M.J. 93, 98 (C.A.A.F. 2014).

*Issues Presented*

In her ruling, the military judge stated:

> [B]ased on the totality of circumstances in this case to date, the failure to generally provide discovery in a timely manner or at all, the disregard of the 7 February 2014 lawful judicial order, witness tampering either intentionally or unintentionally by the [special victims' counsel for the alleged victim], the [R.C.M.] 307(b) requirements for preferral not being met and lastly, the prejudice suffered by the Accused by what was previously mentioned… all actions or inactions on the part of the Government and under the 6[th] Amendment, the defense Motion to Dismiss is GRANTED WITH PREJUDICE.

The Government contends the military judge erred when she dismissed with prejudice the charge and its specifications (1) based on a "totality of circumstances" and (2) where none of her underlying justifications for the dismissal are legitimate.

*Improper Preferral and Witness Tampering*

Two of the issues addressed in the military judge's ruling require only brief consideration. First, the military judge's finding that R.C.M. 307(b) requirements[2] were not met was an abuse of discretion. The military judge found that the squadron superintendent had substantial doubts about (1) the strength of the evidence; (2) the methods employed by the Air Force Office of Special Investigations (AFOSI); and (3) the legal office's failure to provide him some of the evidence, concerns he shared with the squadron commander who was the accuser in this case. The military judge also found that the squadron commander struggled with the difference between incapacitation and impairment, relied on the legal office for information and advice, and in hindsight believed he should probably have personally reviewed the videos of the witnesses' statements prior to preferral. While these findings are fairly supported by the record, they are legally insufficient to render the preferral defective. Rule for Courts-Martial 307(b) does not require a final or conclusive determination of the accused's guilt prior to a court-martial. *United States v. Miller*, 33 M.J. 235, 237 (C.M.A. 1991). The military

---

[2] Rule for Courts-Martial (R.C.M.) 307(b) provides: "A person who prefers charges must: (1) Sign the charges and specifications under oath before a commissioned officer of the armed forces authorized to administer oaths; and (2) State that the signer has personal knowledge of or has investigated the matters set forth in the charges and specifications and that they are true in fact to the best of that person's knowledge and belief."

judge reviewed the weight and sufficiency of the evidence the accuser relied upon and apparently came up with her own conclusion about whether it was convincing or complete. There is no basis in the rules or case law for such a review, and the imposition of this standard of review in excess of the actual requirements of R.C.M 307(b) was error.

Second, to the extent the military judge based her ruling on "witness tampering either intentionally or unintentionally by the [alleged victim's special victims' counsel]," such reliance was also an abuse of discretion. The military judge found the following essential facts: (1) that the alleged victim's current husband refused to answer, in a pretrial interview with trial defense counsel, questions related to communications between himself and the alleged victim; (2) that his refusal was based on his perceived spousal privilege because of advice relayed either directly or indirectly from the alleged victim's assigned special victims' counsel; and, (3) that the husband did answer questions posed by Government counsel related to communications with the alleged victim.

Whether this issue is styled as witness tampering or unequal access to a witness, there is insufficient evidence of Government involvement to warrant a punitive remedy. A witness has no obligation to submit to a pretrial interview. *United States v. Morris*, 24 M.J. 93, 95 (C.M.A. 1987). When a witness places conditions on defense interviews that originate from a third party, rather than the Government, such conditions are not generally a violation of Article 46, UCMJ, 10 U.S.C. § 846. *Cf. Id.*; *United States v. Alston*, 33 M.J. 370, 373 (C.M.A. 1991). There is no evidence in the military judge's findings of fact that suggest the alleged victim's counsel was acting on behalf of the Government, rather than on behalf of her client.

Even if the Government in some way contributed to or unfairly benefited from the husband's refusal to answer trial defense counsel's questions, the military judge's ruling does not address any of the potential lesser remedies as required by *Gore*. Based solely on the record before us, it is not clear that the privilege applied to the interview questions at issue since the alleged victim is not a party to the proceeding, and the communications occurred prior to the marriage. A brief inquiry into the factual basis for any privilege and appropriate instruction from the military judge may have completely resolved the issue. If it did not, the trial court still retained the standard options for dealing with a reluctant witness, including granting trial defense counsel leeway on cross-examination, limiting the testimony of related Government witnesses, initiating contempt proceedings, or, in an appropriate case, abatement. In the absence of any analysis as to the lack of efficacy of these lesser remedies, dismissal with prejudice on these grounds alone would have been an abuse of discretion.

*Failure to Provide Timely Discovery*

The military judge also found that the Government repeatedly failed to timely disclose and produce required evidence both before and after arraignment. The military judge identified in her findings of fact four specific deficiencies.

First, the Government did not disclose, until ordered to by the first military judge, text messages contained in the data extracted from the alleged victim's phone. Second, the Government did not timely disclose evidence requested by the defense related to an AFOSI polygraph interview of the appellee. This failure carried significant weight for the military judge since the ultimate production of the polygraph evidence required two separate court orders, on 7 February 2014 and 17 April 2014, and the Government only complied with the orders after significant unexplained delay. Third, the Government did not produce 287 pages of Facebook messages between the alleged victim and a third party until trial defense counsel and trial counsel discovered them in a joint review of the AFOSI case materials. Those messages included comments about her relationship with the appellee that the military judge found to be potentially exculpatory. Fourth, the Government did not produce e-mails between the legal office and AFOSI related to the polygraph.[3] The military judge's findings of fact also included a chronology that indicates the polygraph materials and Facebook messages were provided to the defense no later than 23 May 2014.

In her analysis, the military judge relied only on the failure to produce evidence related to the polygraph and the Facebook messages. The military judge began her analysis by reciting the applicable case law related to the Government's due process obligation to produce evidence favorable to the defense. The military judge found that the Government failed to meet that burden by not timely producing such materials. Her determination is fairly supported by the record and was not an abuse of discretion. The remaining question, then, is whether the remedy of dismissal with prejudice was itself an abuse of discretion.

Dismissal is a drastic remedy and courts must look to see whether alternative remedies are available. *Gore*, 60 M.J. at 187. Dismissal is not appropriate where an error can be rendered harmless by an alternative remedy. *Id.* Conversely, dismissal is appropriate when an accused would be prejudiced or no useful purpose would be served by continuing the proceedings. *United States v. Green*, 4 M.J. 203, 204 (C.M.A. 1978) (citing *United States v. Gray*, 47 C.M.R. 484, 486 (C.M.A. 1973)). *See also United States v. Dooley*, 61 M.J. 258, 264–65 (C.A.A.F. 2005) (holding the military judge did not abuse his discretion in dismissing charges with prejudice for a violation of

---

[3] The inability of the Government to produce e-mails appears from the military judge's ruling to be a case of lost evidence, rather than delayed discovery. Since the military judge did not ultimately rely on the Government's failure to produce any e-mails in her analysis or ultimate decision, we need not resolve that ambiguity here.

Misc. Dkt. No. 2014-09

the speedy trial court-martial rule, and recognizing that the military judge assessed the prejudice that would result from remedies short of dismissal).

In dismissing the charges with prejudice, the military judge substantially departed from the remedy selected by the previous judge, which was to issue a more specific order and grant a continuance. Certainly, a military judge may depart from her previous ruling or the rulings of a predecessor if circumstances change. That discretion, however, must not be exercised arbitrarily. We concur with the previous judge that, prior to the start of trial, a continuance in order to allow the defense to consider, investigate and respond to late discovery is normally a sufficient remedy as long as the delay does not violate the accused's right to a speedy trial. *See United States v. Avery*, 52 M.J. 496, 499 (C.A.A.F. 2000); *cf. United States v. Murphy*, 33 M.J. 323, 328–29 (C.M.A. 1991). Article 40, UCMJ, 10 U.S.C. § 840, empowers military judges to, "for reasonable cause, grant a continuance to any party for such time, and as often, as may appear to be just." "Reasonable cause" includes insufficient opportunity to prepare for trial. *See* R.C.M. 906(b)(1), Discussion. In this case, the materials at issue were turned over more than two weeks prior to trial. While the military judge noted that continuances had already been employed as a remedy by both of her predecessors, she did not articulate how those had been insufficient to address the harm engendered by the late production of the polygraph evidence and Facebook messages. Absent such an explanation, the drastic remedy of dismissal with prejudice solely on this basis would be an abuse of discretion.

*Sixth Amendment Right to a Speedy Trial*

The question of whether the Government has violated an accused's right to a speedy trial is a question of law we review de novo. *United States v. Doty*, 51 M.J. 464, 465 (C.A.A.F. 1999). The applicable test is comprised of four factors: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellee made a demand for a speedy trial; and (4) prejudice to the appellee." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005). The first factor also serves a triggering function. Unless the delay is facially unreasonable, the court need not conduct the full four-factor analysis. *See id.*

### 1. Length of the Delay

We find that the delay in this case was facially unreasonable. As the military judge found, by the time the charges were dismissed, 260 days had elapsed since preferral. The R.C.M. 707(a) standard of 120 days, although not directly applicable to the Sixth Amendment analysis,[4] is still a useful basis for comparison. A delay in excess of twice the R.C.M. 707(a) standard, unless justified by the specific circumstances of the

---

[4] R.C.M. 707 requires only that an accused be arraigned by the time specified. The appellee was arraigned within that standard, and therefore R.C.M. 707 was not directly implicated in this case.

case, appears unreasonable on its face. This factor weighs in favor of the appellee. We accordingly proceed to the other three factors to assess whether this delay was justified.

## 2. Reasons for the Delay

Portions of the delay can be attributed to both the appellee and the Government. The Government clearly bears the burden for the time period from preferral to arraignment, and primary responsibility for the delay that occurred between the second court order to turn over the polygraph materials and the trial date. Just prior to arraignment, however, the appellee released one of his assigned military trial defense counsel. The military judge's analysis failed to address this aspect of the delay at all. "An accused cannot be responsible for or agreeable to delay and then turn around and demand dismissal for that same delay." *United States v. King*, 30 M.J. 59, 66 (C.M.A. 1990). Instead, her analysis of the reasons for the delay is restricted to the period from 7 February 2014 (arraignment) to 24 March 2014 (the date the defense received the polygraph material). While the facts surrounding that portion of the delay may carry great weight in her ultimate ruling, we find that it was error not to include the reasons for the rest of the period—from preferral to trial—in her analysis. *See Danylo*, 73 M.J. at 189 (analysis of a speedy trial claim requires consideration of the entire period of delay from preferral until commencement of trial on the merits).

Under our de novo review, we find that this factor weighs slightly in the appellee's favor. Certainly, both sides derived some benefit from parts of the delay. However, the period of time in which the Government failed to diligently pursue the release of polygraph materials in accordance with two valid court orders is the most egregious element of the delay. There is no reason why it should take the Government 69 days to produce materials exclusively within the possession of its own investigative agency. It is understandable why AFOSI may contend that the unrestricted dissemination of polygraph techniques may undermine its mission or the broader use of polygraphs in the personnel security field. Accordingly, we do not consider their demand for a court order or a request for a protective order to be in bad faith. But any such request must be pursued diligently, and we concur with the military judge's finding in this case that it was not. So although it constituted only slightly more than one quarter of the delay in terms of days elapsed, we accord that part of the delay greater weight in finding this factor to support the appellee's claim.

## 3. Demand for Speedy Trial

It is uncontested that the appellee did not demand a speedy trial. The military judge noted that the defense made clear during an Article 39(a), UCMJ, session prior to her being detailed to the case that it was not seeking a continuance due to the alleged discovery violations but instead sought dismissal of the charges. This is different than demanding a speedy trial. This factor weighs in favor of the Government.

## 4. Prejudice

In the Sixth Amendment context, we focus on three core interests in weighing the prejudicial effect of delay: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *See Barker v. Wingo*, 407 U.S. 514, 532 (1972); *United States v. Moreno*, 63 M.J. 129, 138 (C.A.A.F. 2006); *Danylo*, 73 M.J. at 188. The appellee was not incarcerated, nor did the military judge find any facts supporting the conclusion that the appellee experienced any "particularized anxiety or concern" distinguishable from any other service member facing a criminal trial. *See Moreno*, 63 M.J. at 140. Accordingly, we focus on the third interest, whether the delay impaired the appellee's defense.

The military judge accurately identified the applicable standard for prejudice but did not explicitly apply that standard in her analysis. The ruling, in considering prejudice, begins: "*Prejudice:* The defense identifies multiple arguments that the Accused was prejudiced by the two delays, as set forth in their brief and in oral argument," and then sets forth four assertions of harm. The assertions (discussed in more detail below) include: (1) the use of the polygraph results in the Article 32, UCMJ, investigation and the subsequent referral decision; (2) the denial of the defense's ability to review the polygraph video with their experts in a timely manner; (3) the release of one defense counsel and the attendant necessity to bring a new counsel up to speed; and, (4) the need to "make various strategic decisions" based on late discovery and the changes of the military judge detailed to the case. The ruling then immediately concludes "[c]onsidering the four Barker factors and evidence of prejudice, I find that the accused['s] 6th Amendment right to a speedy trial was violated in this case."

It is unclear exactly what the military judge intended by this section of the ruling. If she intended to adopt the four assertions as findings of fact, she did not explicitly say so. Nor did she adopt the assertions as accurate conclusions of law. She did not articulate which, if any, of the three interests articulated in *Barker* and *Moreno* were implicated by the assertions she listed. Accordingly, we treat these assertions only as what the judge described them to be—arguments of trial defense counsel—and proceed to a de novo analysis of the assertions under the *Barker* framework, using facts found by the military judge that are not clearly erroneous. After conducting that review, we do not find that any of the assertions constitute an impairment of the appellee's defense caused by the delay in this case.

The investigating officer or convening authority's consideration of the polygraph materials is completely unrelated to the delay in this case and is irrelevant for the purposes of the *Barker* prejudice factors. Nor are we convinced that any delay ultimately prevented the defense from reviewing the polygraph interview video itself with their expert in a timely manner. The videos were made available electronically on

21 April 2014 and on compact disc on 24 April 2014, both far in advance of the ultimate trial date. More importantly, any delay would have enhanced, not diminished, the appellee's ability to review these materials with his experts.

With regard to the assertion that the "initial delay necessitated the release of defense counsel," we find no evidence supporting that conclusion in the judge's findings of fact or in the record. Of course, the appellee has no obligation to explain why he released his counsel in February 2014, and we draw no negative inference from his decision. But if he wants the court to conclude that the delay was the cause of or even a factor in that decision, that evidence must be somewhere in the record. We also note that the defense counsel was released prior to arraignment, before much of the delay in this case occurred.[5]

Finally, the need to make strategic decisions as a case evolves is not evidence of prejudice. Motion practice often necessitates substantial changes in the evidentiary and procedural posture of a case. The need simply to make decisions related to these changes does not constitute prejudice. If a delay forecloses an option that an accused otherwise might have exercised, then the loss of the option may be prejudicial. The need to decide on options is not. Nor is the change in military judge prejudicial. The military judge's findings of fact contain no evidence that the appellee was denied the opportunity to inquire into potential bias on the part of any of the military judges that handled this case or challenge the detailed military judge on that basis.

On balance, our analysis of the *Barker* factors leads us to conclude that the military judge's determination that the appellee's Sixth Amendment rights were violated was an abuse of discretion. Certainly there were deficiencies in the Government's handling of disclosure and production of evidence in this case. But the military judge's findings of fact support the conclusion that the continuances granted by the previous military judges struck an appropriate balance between a speedy disposition of the charges and the appellee's right to production of evidence favorable to the defense, at the time those decisions were made. In electing to dismiss the case with prejudice, the military judge's findings of fact and conclusions of law failed to consider all of the reasons for delay, failed to consider the entire period of the delay, and failed to apply the appropriate factors in determining whether the appellee was prejudiced.

*Cumulative Effect*

In the final paragraph of her ruling, the military judge grants the defense motion to dismiss based upon "the totality of [the] circumstances." Although we find, as detailed

---

[5] We are also cognizant that the appellee's senior defense counsel left active duty soon after the military judge dismissed this case and that his separation may cause him to be released from the defense team. Because it occurred after the military judge's ruling and does not appear to be part of her findings, any potential prejudice from his release is not before us on this appeal.

above, that the decision to impose the drastic remedy of dismissal with prejudice for any single matter cited by the military judge would have been an abuse of discretion, we must also consider whether the matters taken together nonetheless merit such a remedy. In the context of Article 66, UCMJ, review, our superior court has considered the analogous doctrine of cumulative error. The court held that the cumulative error analysis requires:

> [C]onsidering each such claim against the background of the case as a whole, paying particular weight to factors such as the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the [trial] court dealt with the errors as they arose (including the efficacy-or lack of efficacy--of any remedial efforts); and the strength of the government's case. The run of the trial may also be important; a handful of miscues, in combination, may often pack a greater punch in a short trial than in a much longer trial.

*United States v. Dollente*, 45 M.J. 234, 242 (C.A.A.F. 1996) (quoting *United States v. Sepulveda*, 15 F.3d 1161, 1196 (5th Cir. 1993)).

While the sequential failure of the Government to provide timely discovery in this case was directly related to the length of time required to bring the case to trial, we have found that the delay did not rise to the level of a speedy trial violation and we find little merit in the other issues cited by the military judge, based on the information before us in this Article 62, UCMJ, appeal. Accordingly, we find that dismissal with prejudice under a cumulative effect doctrine in these circumstances was also an abuse of discretion. The military judge provided no analysis of how lesser remedies were rendered ineffective because of the nature and number of errors committed or their combined effect, especially when the ultimate weight of the evidence had yet to be tested.

*Conclusion*

On consideration of the appeal by the United States under Article 62, UCMJ, it is by the court,

**ORDERED:**

The appeal of the United States under Article 62, UCMJ, is hereby **GRANTED**.

The military judge's 12 June 2014 ruling is vacated and the record is returned to the military judge for further action not inconsistent with this opinion.

Senior Judge HECKER and Judge WEBER concur.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court